UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| Aurora Lee, Antoinette Lavern, and Tracy Kramer, on behalf of themselves and all others similarly situated individuals, | )<br>)<br>)<br>) |
| Plaintiffs, | ) Civ. Case No.: |
| v. | ) COLLECTIVE AND CLASS ACTION<br>) COMPLAINT |
| Asurion Insurance Services, Inc., and Asurion Corp., | )<br>) JURY TRIAL DEMANDED |
| Defendants. | ) |

**COLLECTIVE ACTION COMPLAINT AND JURY TRIAL DEMAND**

Plaintiffs Aurora Lee, Antoinette Lavern, and Tracy Kramer, on behalf of themselves and all other similarly situated individuals, by and through undersigned counsel, state the following:

**INRODUCTION**

1. Plaintiffs were employed by Defendants Asurion Insurance Services, Inc. and Asurion Corporation ("Defendants" or "Asurion") as hourly paid customer service representatives and they bring this collective action for unpaid overtime pay under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, for work performed in excess of forty (40) hours during one or more workweeks for which they and other similarly situated individuals did not receive premium overtime pay at a rate of not less than one and one-half times the regular rate of pay. Plaintiffs also bring this case as a class action under Rule 23 for breach of contract.

1

2. Plaintiffs and other similarly situated individuals performed non-exempt work for Defendants as customer service representatives in call center and at-home locations and were paid an hourly wage of approximately $9.00 to $14.00.

3. Both call center and at-home customer service representatives performed the same primary job duties, including answering customer calls, re-directing customer calls to other departments within Defendants' divisions, completing claims and troubleshooting devices for customers, and processing payments from customers.

4. The United States Department of Labor ("DOL") has recognized that customer service representatives (or customer care specialists) "handling telephone calls for their company or on behalf of a client," are entitled to protection under the FLSA, including for an employer's refusal to pay for work performed "from the beginning of the first principal activity of the workday to the end of the last principal activity of the workday." DOL, Fact Sheet No. 64 (attached hereto as *Exhibit A*). A first principal activity of the day includes, for example, "starting the computer to download work instructions, computer applications, and work-related emails." *Id.* Further, a "daily and weekly record of all hours worked, including time spent in pre-shift and post-shift job-related activities must be kept." *Id.*

5. In order to perform their jobs as customer service representatives, Plaintiffs and other similarly situated individuals were required to perform pre-shift work, including turning on computers, waiting for computers to "boot up," logging into computers, opening secure (VPN) connections, opening a suite of work-related software programs and logging into each software program, and reviewing their work schedule for that day all before

clocking into Defendants' time-keeping system and being able to receive telephone calls. Oftentimes the computers "froze" and required multiple "boot-up" attempts. Once their work shift ended, Plaintiffs and other similarly situated individuals were required to perform post-shift work, including, first, clocking out of Defendants' time-keeping system at the conclusion of the last telephone call, followed by closing and logging out of software programs, disconnecting secure connections, and logging out and shutting down computers.

6. Plaintiffs and other similarly situated individuals were not compensated for their pre- and post-shift work, and this "off-the-clock" work was not captured in Defendants' time-keeping system.

7. Defendants suffered or permitted Plaintiffs and other similarly situated individuals to perform "off-the-clock" work without paying them for all hours worked, including overtime pay at a rate not less than one and one-half times the regular rate.

8. Upon information and belief, Defendants operate the same and uniform company-wide practice which denies its hourly paid customer service representatives compensation for all hours worked, including overtime pay at a rate not less than one and one-half times the regular rate of pay.

## **JURISDICTION AND VENUE**

9. This Court has original jurisdiction to hear this Complaint and to adjudicate the claims pursuant to 28 U.S.C. § 1331, because this action is brought under federal law, the FLSA, 29 U.S.C. § 201, *et seq.*

10. Venue is proper in the United States District Court, Middle District of Tennessee, pursuant to 28 U.S.C. § 1391, because Defendant operates facilities in this District and because a substantial part of the events giving rise to the claims occurred in this District.

## PARTIES

*Plaintiffs*

11. Plaintiff Aurora Lee is an adult resident of Lake Havasu, Arizona. From approximately July 2014 to January 2015, Plaintiff Lee was employed as a customer service representative by Defendants at a call center location in Phoenix, Arizona and paid approximately $14.00 an hour. Plaintiff Lee brings this action on behalf of herself and all other similarly situated individuals pursuant to 29 U.S.C. § 216(b), and her Consent to Join this action is attached as *Exhibit B*.

12. Plaintiff Antoinette Lavern is an adult resident of Atlanta, Georgia. From approximately February 2013 to November 2014, Plaintiff Lavern was employed as an at-home customer service representative by Defendants in Atlanta and paid approximately $9.62 an hour. Plaintiff Lavern brings this action on behalf of herself and all other similarly situated individuals pursuant to 29 U.S.C. § 216(b), and her Consent to Join this action is attached as *Exhibit C*.

13. Plaintiff Tracy Kramer is an adult resident of Neenah, Wisconsin. From approximately October 2012 to June 2013, Plaintiff Kramer was employed as an at-home customer service representative by Defendants and paid approximately $9.62 an hour. Plaintiff Kramer brings this action on behalf of himself and all other similarly situated

4

individuals pursuant to 29 U.S.C. § 216(b), and his Consent to Join this action is attached as *Exhibit D*.

*Defendants*

14. Defendant Asurion Corporation is a Delaware corporation.

15. Defendant Asurion Insurance Services Incorporated is a Tennessee corporation with its headquarters located at 648 Grassmere Park, Suite 100, Nashville, Tennessee 37211-3663. Defendant Asurion Corp. is the parent company of Defendant Asurion Insurance Services, Inc.

16. Defendants operate in interstate commerce within the meaning of the FLSA, 29 U.S.C. § 203(s) by, among other things, offering insurance coverage and warranty support services against loss, theft, damage, and malfunction of mobile devices, electronics, appliances, jewelry, eyewear, sporting goods, fitness equipment, and outdoor power equipment. *See https://www.asurion.com/about/partner-with-us/* (last visited October 7, 2015).

17. In 2014, Defendants' customer service representatives "handled nearly 45 million calls" from its customers. *See id.*

18. In 2014, Defendants employed approximately 15,000 employees worldwide and served approximately 280 million customers.

19. Defendants' clients include, for example, Verizon and AT&T.

20. Upon information and belief, at all times relevant, Defendants' annual gross sales made or business done have been in excess of $500,000.

5

# FACTUAL ALLEGATIONS

21. Plaintiffs and the other similarly situated individuals were, or are, employed by Defendants as hourly paid customer service representatives or other job titles performing similar job duties.

22. The primary job duties of customer service representatives is non-exempt work including, for example, answering customer calls, re-directing customer calls to other departments within Defendants' divisions, completing claims and troubleshooting devices for customers, and processing payments from customers.

23. At-home customer service representatives performed the same primary job duties as call center customer service representatives and both performed the same primary pre- and post-shift uncompensated work.

24. In order to perform their jobs as customer service representatives, Plaintiffs and other similarly situated individuals were required to perform pre-shift work, including turning on computers, waiting for computers to "boot up," logging into computers, opening secure (VPN) connections, opening a suite of work-related software programs (Asurion desktop, Avaya, and Kronos), logging into each software program, and reviewing their work schedule for that day all before clocking into Defendants' time-keeping system and being able to receive telephone calls. Oftentimes the computers "froze" and required multiple "boot-up" attempts. Once their work shift ended, Plaintiffs and other similarly situated individuals were required to perform post-shift work, including, first, clocking out of Defendants' time-keeping system at the conclusion of the last telephone call, followed

6

by closing and logging out of software programs, disconnecting secure connections, and logging out and shutting down computers.

25. Defendants suffered or permitted Plaintiffs and the other similarly situated individuals to routinely perform pre- and post-shift "off-the-clock" work without compensation, and this "off-the-clock" work was not captured by Defendants' time-keeping system.

26. Defendants operated a willful scheme to deprive Plaintiffs and the other similarly situated individuals of pay for all hours worked, including overtime pay at a rate of not less than one and one-half times the regular rate of pay.

27. As sophisticated employers, Defendants were, or should have been aware that Plaintiffs and the other similarly situated individuals performed work that required compensation for all hours worked, including overtime pay at a rate of not less than one and one-half times the regular rate of pay.

28. Defendants' conduct was willful and not in good faith, and has caused significant damages to Plaintiffs and the other similarly situated individuals.

## COLLECTIVE ACTION ALLEGATIONS

29. Plaintiffs, on behalf of themselves and all other similarly situated individuals, re-allege and incorporate by reference the above paragraphs as if fully set forth herein.

30. Plaintiffs bring this action on behalf of themselves and all other similarly situated individuals pursuant to the FLSA, 29 U.S.C. § 216(b). The proposed FLSA Collectives are defined as follows:

> All persons who are or have been employed by Defendants as call center customer service representatives, or other job titles performing similar job duties, who performed uncompensated pre- and post-shift work, including not receiving overtime pay at a rate of not less than one and one-half times the regular rate of pay when they worked more than forty (40) hours in a week, at any time from three years prior to the filing of this Complaint and through the entry of final judgment.
>
> --AND--
>
> All persons who are or have been employed by Defendants as at-home customer service representatives, or other job titles performing similar job duties, who performed uncompensated pre- and post-shift work, including not receiving overtime pay at a rate of not less than one and one-half times the regular rate of pay when they worked more than forty (40) hours in a week, at any time from three years prior to the filing of this Complaint and through the entry of final judgment.

31. During the applicable statutory period, Defendants suffered or permitted Plaintiffs and the FLSA Collectives to routinely perform pre- and post-shift "off-the-clock" work without compensation, including without receiving overtime pay at a rate of not less than one and one-half times the regular rate of pay.

32. Plaintiffs and the FLSA Collectives have been or are employed in the same or similar positions and have been or are subject to the same or similar company-wide unlawful pay practice, policy and scheme, and their claims are based upon the same factual and legal theories.

33. Defendants willfully engaged in a pattern of violating the FLSA, as described in this Complaint in ways including, but not limited to, by routinely suffering or permitting Plaintiffs and the FLSA Collectives to work "off-the-clock" and in excess of forty (40) hours in workweeks without receiving compensation for all hours worked.

34. Defendant's conduct constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

35. Defendants are liable under the FLSA for failing to properly compensate Plaintiffs and members of the FLSA Collectives, and as such, notice should be sent to the FLSA Collectives.

36. Upon information and belief, there are numerous other similarly situated current and former customer service representatives, who performed uncompensated pre- and post-shift work in violation of the FLSA and would benefit from the issuance of a court-supervised notice of this action and the opportunity to join it. Those similarly situated employees are known to Defendants and are readily identifiable through Defendants' records.

## RULE 23 CLASS ACTION ALLEGATIONS

37. Plaintiffs bring this action pursuant to Fed R. Civ. P. 23(b)(2) and (b)(3) on their own behalf and on behalf of:

> All persons who are or have been employed by Defendants as call center customer service representatives (at-home and brick-and-mortar), or other job titles performing similar job duties, who performed uncompensated pre- and post-shift work, including not receiving overtime pay at a rate of not less than one and one-half times the regular rate of pay when they worked more than forty (40) hours in a week, at any time from three years prior to the filing of this Complaint and through the entry of final judgment.

(hereinafter referred to as the "Rule 23 Class"). Plaintiffs reserve the right to amend this definition if necessary.

38. The members of the Rule 23 Class are so numerous that joinder of all Rule 23 Class members in this case would be impractical. Plaintiffs reasonably estimate there are thousands of Rule 23 Class members. Rule 23 Class members should be easy to identify from Defendants' computer systems and electronic payroll and personnel records.

39. There is a well-defined community of interest among Rule 23 members and common questions of law and fact predominate in this action over any questions affecting individual members of the Rule 23 Class. These common legal and factual questions, include, but are not limited to, the following:

    a. Whether the preliminary time Rule 23 Class members spend on start-up and log- in activities each session is compensable time;

    b. Whether the mid-shift time Rule 23 Class members spend on Asurion, Avaya and/or Kronos connectivity issues is compensable time;

    d. Whether the postliminary time Rule 23 Class members spend on log-out activities is compensable time; and

    e. Whether Defendants' non-payment of wages for all compensable time amounted to a breach of contract.

40. Plaintiffs' claims are typical of those of the Rule 23 Class in that they and all other Rule 23 Class members suffered damages as a direct and proximate result of the Defendants' common and systemic payroll policies and practices. Plaintiffs' claims arise from the same pay policies, practices, promises and course of conduct as all other Rule 23 Class members' claims and their legal theories are based on the same legal theories as all other Rule 23 Class members.

41. Plaintiffs will fully and adequately protect the interests of the Rule 23 Class and they have retained counsel who are qualified and experienced in the prosecution of nationwide wage and hour class actions. Neither Plaintiffs nor their counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 Class.

42. A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because, *inter alia*, it is economically infeasible for Rule 23 Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer. Prosecution of this case as a Rule 23 Class action will also eliminate the possibility of duplicative lawsuits being filed in state and federal courts throughout the nation.

43. This case will be manageable as a Rule 23 Class action. Plaintiffs and their counsel know of no unusual difficulties in this case and Defendants and its corporate clients all have advanced, networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

44. Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate. *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393; 130 S. Ct. 1431, 1437 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

45. Because Defendants acted and refused to act on grounds that apply generally to the Rule 23 Class and declaratory relief is appropriate in this case with respect to the Rule 23 Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

## COUNT I

### FAILURE TO PAY OVERTIME WAGES IN VIOLATION OF THE FAIR LABOR STANDARDS ACT, 29 U.S.C. § 201, *et seq.*

46. Plaintiffs, on behalf of themselves and all other similarly situated individuals, re-allege and incorporate by reference the above paragraphs as if fully set forth herein.

47. Defendants are employers within the meaning of the FLSA, 29 U.S.C. § 203(d).

48. Plaintiffs and the FLSA Collectives are, or were, employees of Defendants within the meaning of the FLSA, 29 U.S.C. § 203(e), (g).

49. Plaintiffs and the FLSA Collectives are non-exempt employees under the FLSA, and are entitled to its protections.

50. The FLSA, 29 U.S.C. § 207, requires covered employers to pay non-exempt employees premium overtime pay at a rate of not less than one and one-half times the regular rate of pay for all hours worked over forty (40) hours per workweek.

51. Defendants suffered or permitted Plaintiffs and the FLSA Collectives to perform pre- and post-shift "off-the-clock" work that was not captured by Defendants' time-keeping system.

52. Defendants' actions, policies and practices described herein violate the FLSA's pay provisions by regularly and repeatedly failing to compensate Plaintiffs and the FLSA Collectives for all hours worked, including premium overtime pay.

53. Upon information and belief, Plaintiffs and the FLSA Collectives have been subject to the same and uniform company-wide practice which operates to deny them pay for all hours worked.

54. Defendants knew, or showed reckless disregard for the fact that it failed to pay Plaintiffs and the FLSA Collectives all wages due for all hours worked.

55. The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of the FLSA, 29 U.S.C. § 255(a).

56. As the direct and proximate result of Defendants' unlawful conduct, Plaintiffs and the FLSA Collectives have suffered and will continue to suffer a loss of income and other damages.

57. Plaintiffs and the FLSA Collectives seek damages in the amount of their unpaid wages from three years immediately preceding the filing of this action, an equal amount in liquidated damages, interest, reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 216(b) and § 255(a), and such other legal and equitable relief as the Court deems just and proper.

## COUNT II

## BREACH OF CONTRACT

58. Plaintiffs, on behalf of themselves and all other similarly situated individuals, re-allege and incorporate by reference the above paragraphs as if fully set forth herein.

59. At all times relevant to this action, Defendants had a contract with Plaintiffs and every other Rule 23 Class member to pay each employee for each hour they worked at a pre-established (contractual) regularly hourly rate.

60. Each Rule 23 Class member's contractual hourly rate is identified in paystubs and other records that Defendants prepare as part of their regular business activities.

61. Upon information and belief, each Rule 23 Class member, including Plaintiffs, have an hourly rate between $9.00 and $14.00 per hour.

62. Plaintiffs and every other Rule 23 Class member performed under the contract by doing their jobs and carrying out the preliminary, mid-shift, lunch-break and postliminary activities that Defendants required or accepted.

63. By not paying Plaintiffs and every other Rule 23 Class member the agreed upon hourly wage for the preliminary start-up and log-in activities performed each session, the mid-shift work performed in connection with Defendants' applications, Avaya and/or Kronos connectivity issues, for time spent on their lunch-breaks, and the postliminary log-out activities performed at the end of each shift, Defendants systematically breached their contracts with Plaintiffs and each member of the Rule 23 Class.

64. Plaintiffs' and the Rule 23 Nationwide Class members' remedies under the FLSA are inadequate in this case to the extent Defendants paid them more than the federally mandated minimum wage of $7.25 per hour but less than 40 hours per week (i.e., pure "gap time" claims).

65. Defendants also breached their duty of good faith and fair dealing by failing to keep track of the time Plaintiffs and other Rule 23 Class members spent doing preliminary, mid-shift, lunch-break and postliminary activities, which is a fundamental part of an "employer's job."

66. The contract and contractual obligations in question are not employment contracts in that they do not relate to or guarantee that any services will be performed in the future.

67. As a direct and proximate result of Defendants' breaches of the contracts alleged herein, Plaintiffs and every other member of the Rule 23 Class has been damaged, in an amount to be determined at trial.

68. These claims are appropriate for nationwide class certification under Rules 23(b)(2) and (b)(3) because the law of contracts is substantially the same throughout the United States.

**PRAYER FOR RELIEF**

69. WHEREFORE, Plaintiffs, on behalf of themselves and all other similarly situated individuals who join in this action, pray for the following relief:

a. Designation of this action as a collective action and prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of the FLSA Collectives apprising them of the pendency of this action, and permitting them to assert FLSA claims in this action by filing individual consent to join forms pursuant to 29 U.S.C. § 216(b);

b. Judgment that Plaintiffs and the FLSA Collectives are non-exempt employees entitled to protection under the FLSA;

c. Judgment against Defendants for violation of the overtime pay provisions of the FLSA;

d. Judgment that Defendants acted willfully in violating the FLSA and not in good faith;

e. Judgment against Defendants for an amount equal to Plaintiffs' and the FLSA Collectives' unpaid overtime wages owed at the applicable overtime rate calculated at one and one-half times the regular rate of pay and an equal amount in liquidated damages pursuant to 29 U.S.C. § 216(b);

f. For an award of reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 216(b);

g. For certification of the Rule 23 Class;

h. An award of pre- and post-judgment interest;

i. Leave to add additional plaintiffs by motion, the filing of written consent forms, or any other method approved by the Court;

j. Leave to amend to add claims under applicable federal and state laws; and

k. For such other relief as the Court deems just and equitable.

## JURY TRIAL DEMAND

70. A jury trial is demanded on all claims so triable in this action.

Dated: October 20, 2015

RESPECTFULLY SUBMITTED,

s/ Gregory F. Coleman
Gregory F. Coleman, BPR #014092
GREG COLEMAN LAW PC
First Tennessee Plaza
800 S. Gay Street, Suite 1100
Knoxville, TN 37929
T: 865-247-0080
F: 865-522-0049
E: greg@gregcolemanlaw.com

G. Tony Atwal (MN Bar No. 0331636)*
Jacob R. Rusch (MN Bar No. 0391892)*
JOHNSON BECKER, PLLC
30 South Sixth Street, Suite 4530
Minneapolis, MN 55402
T: 612-436-1800
F: 612-436-1801
E: tatwal@johnsonbecker.com
   jrusch@johnsonbecker.com

Jason J. Thompson (MI Bar No. P47184)*
Jesse L. Young (MI Bar No. P72614)*
**SOMMERS SCHWARTZ, P.C.**
One Towne Square, Suite 1700
Southfield, Michigan 48076
T: 248-355-0300
F: 248-746-0300
E: jthompson@sommerspc.com
   jyoung@sommerspc.com

*motion for pro hac vice admission forthcoming*

ATTORNEYS FOR PLAINTIFFS

3